# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| THE EDGE IN COLLEGE PREPARATION, LLC, a New York limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>PETERSON'S NELNET, LLC, a Nebraska limited liability company,<br><br>Defendant. | Case No. 8:16-CV-559<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES AND DEMAND FOR JURY TRIAL**<br><br>**JURY DEMAND** |

COMES NOW, the Plaintiff, The Edge in College Preparation, LLC, by and through its undersigned counsel, and for its Complaint against Peterson's Nelnet, LLC, states and alleges as follows:

## THE PARTIES

1. Plaintiff, The Edge in College Preparation, LLC ("ECP"), is a New York limited liability company with its principal place of business in Glen Cove, New York. The sole member of ECP is Jessica Davidoff, who is a resident and citizen of New York.

2. Defendant, Peterson's Nelnet, LLC ("Peterson's"), is a Nebraska limited liability company with its principal place of business in Nebraska. The sole member of Peterson's is National Education Loan Network, Inc., a Nevada corporation with its principal place of business in Nebraska.

## JURISDICTION AND VENUE

3. Subject matter jurisdiction is proper in this case pursuant to 28 U.S.C. §§ 1331, 1332, and 1338. The amount in controversy herein is in excess of $75,000.00.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400.

## FACTUAL BACKGROUND

5. ECP is a test preparation company that specializes in helping high-school students prepare for college-entrance exams, such as the SAT and ACT.

6. Peterson's is a wholly-owned subsidiary of Nelnet, Inc., and it advertises itself as one of the leading education services companies in the United States.

7. ECP was founded by Jessica Davidoff in 2005. Davidoff is a Princeton University graduate and she achieved a perfect score on the SAT. After working for a well-known SAT prep company in New York, Davidoff founded ECP and began operating in New York. ECP now operates in five international locations.

8. On or about May 19, 2015, ECP and Peterson's entered into a publication contract entitled "Peterson's Contract" (the "Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit A and incorporated herein by this reference.

9. Pursuant to the Agreement, ECP agreed to produce, and Peterson's agreed to purchase, a text manuscript containing tips and strategies for preparing for the ACT exam, tentatively titled "Peterson's ACT 2016" (the "Work").

10. Pursuant to the Agreement, ECP agreed to submit the Work in batches, as specified in the Production Schedule set forth in Exhibit C of the Agreement.

11. In exchange for the Work, Peterson's agreed to pay ECP a total sum of $180,000.00--$60,000.00 within 10 days of the execution of the Agreement, $60,000.00 within 10 days of the acceptance of content in the third batch, and $60,000.00 upon final written acceptance by Peterson's of the Work.

12. ECP diligently prepared the content for the Work based upon its expertise and history of success in the test preparation market. ECP produced the Front Matter, Part I, and Part II of the Work in accordance with the Production Schedule.

13. Peterson's reviewed the submitted portions of the Work and accepted the same with relatively minor suggestions for changes. ECP promptly incorporated such changes into the Work and submitted the revised Work to Peterson's.

14. ECP continued its production of the Work and submitted a portion of Part III in advance of the deadline in the Production Schedule, so that Peterson's would have the opportunity to provide feedback on the submitted portion prior to the deadline for the remainder of Part III, consistent with discussions between Peterson's and ECP. Notably, Peterson's failed to provide ECP with any feedback before the deadline for Part III.

15. After ECP submitted Part III of the Work, Peterson's advised ECP that it was considering terminating the Agreement. Shortly thereafter, on August 10, 2015, Peterson's notified ECP in a telephone call of its decision to terminate the Agreement. Peterson's later explained its position in writing, stating that it terminated the Agreement because Part III of the Work was "woefully deficient," "of minimal or no value," "unprofessional," and "embarrassing and performed in bad faith." Peterson's also stated that the effort displayed in the Work "shocked the conscience and was totally devoid of any good faith effort."

16. Despite its contentions that ECP's work was woefully deficient and of no value, Peterson's then proposed an amendment to the Agreement whereby ECP would no longer work on the ACT prep book, but instead would author a different publication for Peterson's. Peterson's also proposed that it be allowed to retain the rights to use ECP's work in the future. ECP declined Peterson's offers to amend the Agreement.

17. Pursuant to Section 8 of the Agreement, if Peterson's found any portion of the delivered manuscript unsatisfactory, it was required to give ECP the opportunity to cure any such alleged deficiencies by finishing, correcting, or improving the Work. Peterson's could terminate the Agreement only if it found ECP's revised Work unsatisfactory, after having given ECP the opportunity to cure.

18. ECP has at all times expressed its willingness to make corrections, improvements, or other changes to the Work as requested by Peterson's, but Peterson's did not give ECP the reasonable opportunity to make any corrections or improvements to Part III of the Work.

19. By terminating the Agreement without affording ECP the reasonable opportunity to revise the Work, Peterson's materially breached the Agreement for the purpose of avoiding its obligation to pay ECP the balance of $120,000.00 owed under the Agreement.

20. The Work is ECP's original work and qualifies for protection under the Copyright Act. ECP has complied with the statutory formalities under the Act and has applied for copyright registration in the Work.

21. Pursuant to Section 8 of the Agreement and the Copyright Act, ECP is the lawful owner of the intellectual property rights to the Work following Peterson's termination of the Agreement.

22. ECP recently learned that Peterson's published two ACT preparation books titled "Peterson's ACT Prep Guide" and "Peterson's ACT Prep Guide Plus" (the "Infringing Publications") in 2016. The two Infringing Publications are similar, with the exception that "Peterson's ACT Prep Guide Plus" also contains additional CD and online material.

23. The organization, arrangement, layout, and, at times, the language used in parts of the Infringing Publications are substantially similar to ECP's Work that was submitted to, and later denounced by, Peterson's.

24. Given the substantial similarity between the two works, it is inconceivable that Peterson's prepared the Infringing Publications without referring to the Work, for which ECP retained the intellectual property rights.

25. Upon information and belief, Peterson's referred to ECP's work during the preparation of the Infringing Publications.

26. Peterson's copied parts of ECP's work while preparing the Infringing Publications.

27. Peterson's infringed upon ECP's copyright in the Work, entitling ECP to damages and any profits Peterson's generated from the Infringing Publications, as well as injunctive relief.

28. Despite due demand by ECP for Peterson's to pay the aforementioned damages, Peterson's has failed and refused to pay the amounts due and owing.

## COUNT I - BREACH OF CONTRACT

29. ECP incorporates the allegations of Paragraphs 1 through 28 above as if fully set forth herein.

30. Under the Agreement, Peterson's agreed to purchase the Work as produced by ECP in accordance with the Production Schedule.

31. Until Peterson's wrongfully terminated the Agreement, ECP had performed all conditions precedent under the Agreement and met all deadlines contained in the Production Schedule.

32. Notwithstanding ECP's performance, Peterson's terminated the Agreement without identifying any deficiencies in Part III of the Work and without affording ECP the reasonable opportunity to improve or correct that portion of the submitted Work.

33. Peterson's breached the Agreement and also breached the covenant of good faith and fair dealing.

34. Peterson's has failed and/or refused to pay ECP the total sum of $120,000.00 due and owing under the Agreement.

## COUNT II - COPYRIGHT INFRINGEMENT

35. ECP incorporates the allegations of Paragraphs 1 through 34 above as if fully set forth herein.

36. Peterson's used, reproduced, and/or distributed the copyrighted Work for commercial gain.

37. ECP did not authorize Peterson's to use, reproduce, and/or distribute the copyrighted Work.

38. The use of the copyrighted Work by Peterson's constitutes an infringement of ECP's copyright in the Work.

39. Peterson's stated reasons for terminating the Agreement were pretextual, and Peterson's subsequent infringement of the Work was willful.

40. Peterson's has profited from the infringement of the copyrighted Work.

41. ECP has suffered damages as a result of the infringement by Peterson's and will continue to suffer damages as Peterson's markets, sells, and distributes the Infringing Publications.

## COUNT III - UNFAIR COMPETITION

42. ECP incorporates the allegations of Paragraphs 1 through 41 above as if fully set forth herein.

43. Peterson's receipt of ECP's work, and its termination of the Agreement for pretextual reasons, and for the purpose of using ECP's Work without proper authorization or compensation, constitutes unfair competition.

44. The unfair competition by Peterson's has caused and will cause irreparable injury and damage to ECP for which ECP has no adequate remedy at law.

## COUNT IV - DECEPTIVE TRADE PRACTICES ACT –
## NEB. REV. STAT. §§ 87-301 to 306

45. ECP incorporates the allegations of Paragraphs 1 through 44 above as if fully set forth herein.

46. Peterson's conduct violates Nebraska's Deceptive Trade Practices Act, Neb. Rev. Stat. §§ 87-301 to 306, specifically including various deceptive trade practices set forth in section 87-302(a).

47. Peterson's unlawful conduct caused and is causing harm to ECP, and is likely to continue to cause such harm, for which there is no adequate remedy at law.

48. ECP is entitled to all relief allowed under the law, including an award of damages, an award of attorney's fees and costs, and preliminary and permanent injunctive relief.

## PRAYER FOR RELIEF

49. WHEREFORE, ECP respectfully requests an Order:

A. Awarding ECP its actual damages in an amount to be proven at trial;

B. Requiring Peterson's to provide an accounting of its wrongful conduct herein described and an accounting of the gross profits attributable to the wrongful conduct;

C. Awarding ECP all of Defendant's profits, direct and indirect, attributable to the Defendant's wrongful conduct;

D. Awarding ECP its costs and attorney's fees;

E. Awarding pre-judgment interest, as allowed by law;

F. Enjoining Defendant from any further use, display, reproduction, marketing, distribution, or sale of the Infringing Works or of ECP's Work; and

G. Awarding ECP any and all further and other relief the Court deems fair and just.

50. ECP hereby demands trial by jury in Omaha, Nebraska.

WHEREFORE, the Plaintiff prays for judgment in its favor, and against Defendant, as herein described.

Dated this 22nd day of December, 2016.

    Respectfully submitted,

    THE EDGE IN COLLEGE PREPARATION, LLC,
    Plaintiff

BY: /s/ Patrick S. Cooper
    Patrick S. Cooper, #22399
    Christopher O. Estwick, #25670
    FRASER STRYKER PC LLO
    500 Energy Plaza
    409 South 17th Street
    Omaha, Nebraska 68102-2663
    (402) 341-6000
    pcooper@fslf.com
    cestwick@fslf.com
    ATTORNEYS FOR PLAINTIFF