IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| THE EDGE IN COLLEGE PREPARATION, LLC, a New York limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>PETERSON'S NELNET, LLC, a Nebraska limited liability company,<br><br>Defendant. | 8:16-CV-559<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the defendant's motion to dismiss (filing 12) two of the plaintiff's claims for relief. That motion will be granted.

BACKGROUND

The plaintiff, The Edge in College Preparation (ECP), specializes in helping high school students prepare for college entrance examinations. Filing 1 at 2. Peterson's is an educational services company. Filing 1 at 2. The parties entered into a publishing contract in 2015. Filing 1-1. ECP agreed to prepare a manuscript to be published by Peterson's as "Peterson's ACT 2016," in exchange for $180,000. Filing 1 at 1; filing 1-1 at 1, 4.

ECP completed the initial portions of the manuscript and submitted them to Peterson's, which accepted them with minor revisions. Filing 1 at 3. But Part III of the manuscript was, according to ECP, deficient. Filing 1 at 3. Peterson's proposed amending the publishing contract so that ECP would author a different publication, and Peterson's would retain the rights to use ECP's work on the ACT publication. Filing 1 at 3. ECP refused, and

Peterson's terminated the contract. Filing 1 at 3-4. A balance of $120,000 remained due at the time of the termination. Filing 1 at 4.

ECP alleges that Peterson's subsequently published two ACT preparation books: "Peterson's ACT Prep Guide" and "Peterson's ACT Prep Guide Plus." Filing 1 at 4. According to ECP, the publications are substantially similar to the work ECP performed for Peterson's, and ECP alleges that "[g]iven the substantial similarity between the two works, it is inconceivable that Peterson's prepared the Infringing Publications without referring to the Work, for which ECP retained the intellectual property rights." Filing 1 at 5. ECP alleges that Peterson's referred to ECP's work and copied parts of it. Filing 1 at 5.

ECP sued Peterson's, asserting four claims for relief: breach of contract, copyright infringement, unfair competition, and violation of the Nebraska Uniform Deceptive Trade Practices Act (UDTPA), Neb. Rev. Stat. § 87-301 *et seq*. Filing 1 at 5-7. Peterson's moves to dismiss two of those claims. Filing 12.

## STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* While the Court must accept as true all facts pleaded by the nonmoving party and grant all reasonable inferences from the pleadings in favor of the nonmoving party, *Gallagher v. City of Clayton,* 699 F.3d 1013, 1016 (8th Cir. 2012), a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. *Iqbal,* 556 U.S. at 678. Determining whether a

complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

## DISCUSSION

Peterson's moves to dismiss ECP's unfair competition and UDTPA claims. Filing 12.

### UNFAIR COMPETITION

Peterson's contends that ECP's unfair competition claim is preempted by the federal Copyright Act, 17 U.S.C. § 101 *et seq.* ECP grounds its claim in both Nebraska common law and the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1602 *et seq.* Filing 19 at 5, 10. The Court will begin with the common-law claim.

Pursuant to § 301(a) of the Copyright Act, federal copyright law preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright." *See Dryer v. Nat'l Football League*, 814 F.3d 938, 942 (8th Cir. 2016). In determining whether federal copyright law preempts a cause of action under state law, the Court asks (1) whether the work at issue is within the subject matter of copyright and (2) whether the state law created right is equivalent to any of the exclusive rights within the general scope of copyright as specified in § 106. *Dryer,* 814 F.3d at 942. If a plaintiff's state-law claim meets both of those criteria, copyright law will preempt that claim as a matter of law. *Id.* And it is not disputed, in this case, that the work produced by ECP comes within the general scope of copyright. Filing 19 at 5.

So, the question is whether the common-law right ECP is asserting is equivalent to an exclusive right within the general scope of copyright. *See Dryer*, 814 F.3d at 942. The purpose of copyright protection is to supply the economic incentive to create and disseminate ideas. *Id.* Copyright law achieves that objective by establishing a marketable right to the use of one's expression. *Id.* at 943. Specifically, the Copyright Act gives copyright owners exclusive rights to do and to authorize, among other things, the reproduction of the copyrighted work, the distribution of copies of the copyrighted work to the public by sale, and the display of copyrighted work publicly. *See Ray v. ESPN, Inc.*, 783 F.3d 1140, 1144 (8th Cir. 2015) (citing § 106).

In this case, it is precisely such a right that ECP is attempting to assert under state law: the wrongful act alleged by ECP as unfair competition is the reproduction and distribution of ECP's copyrighted work. And a state-law right in a work is equivalent to the right conferred by copyright if the state-law right is infringed merely by publication of the work. *See id.* (citing *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 667 (7th Cir. 1986)); *compare Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426, 430 (8th Cir. 1993).

ECP argues, however, that its unfair competition claim requires an element in addition to publication. If an extra element is required in order to constitute a state-created cause of action, instead of or in addition to the acts of reproduction, performance, distribution, or display, then the right does not lie within the general scope of copyright and there is no preemption. *Nat'l Car Rental*, 991 F.2d at 431. But ECP's complaint is silent, and its brief is also far from clear, on what exactly that additional element might be. ECP grounds its argument on "the nebulous nature of unfair competition and the admittedly thin case law defining common law unfair competition claims in

Nebraska." Filing 19 at 6. But the caselaw isn't really "thin": it's just not very helpful to ECP.

The common-law definition of unfair competition involves "palming off" one's goods as the goods of another. *John Markel Ford, Inc. v. Auto-Owners Ins. Co.*, 543 N.W.2d 173, 178 (Neb. 1996); *see*, *Kirsch Fabric Corp. v. Brookstein Enters., Inc.*, 309 N.W.2d 328, 330 (Neb. 1981); *Ransdell v. Sixth St. Food Store of Lexington, Inc.*, 120 N.W.2d 290, 293-94 (Neb. 1963); *Pers. Fin. Co. of Lincoln v. Pers. Loan Serv.*, 275 N.W. 324, 326-27 (Neb. 1937); *Riggs Optical Co. v. Riggs*, 270 N.W. 667, 669 (Neb. 1937).

> The courts say that unfair competition means any conduct in a trade or business whereby one party, by deceptive means, transacts his business with the public in such a manner as to leave the public with the impression that they are actually dealing with another. The doctrine involves misrepresentation, either express or implied.

*Pers. Fin. Co.*, 275 N.W. at 326. In order to invoke this rule, some deception must be practiced upon the public that is likely to mislead or confuse persons of ordinary intelligence. *Id*.

> Either actual or probable deception, or confusion, must be shown to entitle the plaintiff to the protection of the rule. This is usually accomplished by showing circumstances from which courts might justly conclude that persons are likely to transact business with one party under the belief they are dealing with another. Where there is no probability of deception, there can be no unfair competition.

*Id.* at 327; *accord Ransdell,* 120 N.W.2d at 294.

The problem for ECP is twofold. The first is that the complaint does not actually state a claim for unfair competition, because nothing in the complaint supports an inference that ECP and Peterson's are competitors in the marketplace, and "there cannot be unfair competition where there is no competition in fact." *Riggs,* 270 N.W. at 669. The second problem is that, however incomplete ECP's allegations might be, what it *has* alleged is coextensive with copyright.

It was based on precisely that reasoning that the Nebraska Supreme Court concluded, in *Richdale Dev. Co. v. McNeil Co., Inc.*, that a plaintiff's unfair competition claim was preempted by the Copyright Act. 508 N.W.2d 853, 858-59 (Neb. 1993). That case involved misappropriated architectural plans, but the defendant had not built or marketed a building from the plaintiff's plans. *Id.* at 858-59. So, the Court found, there was "no element of consumer confusion in this case which would qualitatively distinguish an unfair competition claim from a claim within the scope of the copyright act." *Id.* at 859. In the instant case, it is the plaintiff, not the defendant, who has not marketed its work, but the end result is the same: there is no element of consumer confusion to distinguish ECP's unfair competition claim from a copyright claim. *See id.*; *see also Issaenko v. Univ. of Minn.,* 57 F. Supp. 3d 985, 1023-24 (D. Minn. 2014).

ECP "contends that its allegations are sufficient at the pleading stage to suggest consumer confusion." Filing 19 at 10. But the gravamen of "unfair competition," as the name of the tort suggests, isn't simply whether a consumer was misled: it is whether the defendant made a representation relating to its own goods or services "that is likely to deceive or mislead prospective purchasers *to the likely commercial detriment of another* . . . ."

*John Markel Ford*, 543 N.W.2d at 178 (emphasis supplied) (quoting Restatement (Third) of Unfair Competition § 2)). And ECP does not allege any misrepresentation in Peterson's marketing of its publications other than Peterson's using ECP's alleged work as if Peterson's owned it. *See Issaenko*, 57 F. Supp. 3d at 1023.

ECP also suggests that it has "pleaded sufficient facts to suggest that Peterson's entered into the Agreement in bad faith and breached a relationship of trust, which is sufficient to make the unfair competition claim qualitatively different from, and not preempted by, ECP's accompanying copyright infringement claim." Filing 19 at 8. And perhaps ECP has alleged facts suggesting bad faith or breach of duty—but Peterson's is not arguing that ECP's breach of contract claim is preempted. Neither bad faith nor breach of duty are essential to, or support, an unfair competition claim under Nebraska law. ECP "fails to allege an element necessary to establish a claim outside the scope of copyright protection[,]" and "[p]laintiffs may not by miscasting their causes of action secure the equivalent of copyright protection under the guise of state law." *Richdale*, 508 N.W.2d at 860.

ECP also asserts a statutory unfair competition claim based on § 59-1602 of the Consumer Protection Act, which provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful." But that presents ECP with a different problem, because while a claim under the Consumer Protection Act has a requirement that a copyright claim does not, it is a requirement that ECP does not meet. The ambit of the Consumer Protection Act is limited to "unfair or deceptive acts or practices that affect the public interest." *Nelson v. Lusterstone Surfacing Co.*, 605 N.W.2d 136, 141 (Neb. 2000); *see also, Eicher v. Mid Am. Fin. Inv. Corp.*, 748 N.W.2d 1, 12 (Neb. 2008); *Arthur v. Microsoft*

*Corp.*, 676 N.W.2d 29, 36 (Neb. 2004). It is not available to address a private wrong where the public interest is unaffected. *Nelson*, 605 N.W.2d at 142; *see*, *Eicher*, 748 N.W.2d at 12; *Arthur*, 676 N.W.2d at 37. Specifically, the conduct at issue must directly or indirectly affect the people of Nebraska. *Arthur*, 676 N.W.2d at 37-38.

And ECP does not allege that any Nebraska consumers were affected by Peterson's conduct: ECP simply asserts that "[t]he unfair competition by Peterson's has caused and will cause irreparable injury and damage to ECP for which ECP has no adequate remedy at law." Filing 1 at 7. ECP argues that Peterson's alleged conduct impacted the public because it sold the publications "to the public at large, misrepresenting the material as its own work." Filing 19 at 16. But even if it was alleged that the publications were sold in Nebraska, it would not suffice: it would establish no more injury to the public than the parties themselves contemplated by performance of their contract. That theory, if pursued, would simply be that the public was somehow injured by Peterson's alleged violation of ECP's copyright—an unpersuasive claim, and one that would simply swing the analysis back around to preemption under the Copyright Act.

In sum, ECP's unfair competition claim is deficient because ECP did not actually compete with Peterson's in the marketplace, and the theory ECP advances in support of its claim is preempted by the Copyright Act. ECP's unfair competition claim will be dismissed.

UNIFORM DECEPTIVE TRADE PRACTICES ACT

As relevant, the UDTPA provides that a person engages in a deceptive trade practice "when, in the course of his or her business, vocation, or occupation, he or she: . . . [c]auses likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of

goods or services" or, alternatively, "[u]ses any scheme or device to defraud by means of: (i) [o]btaining money or property by knowingly false or fraudulent pretenses, representations, or promises; or (ii) [s]elling, distributing, supplying, furnishing, or procuring any property for the purpose of furthering such scheme . . . ." § 87-302(a); *see* filing 19 at 17. The UDTPA is meant to protect both consumers and competitors from deception. *Richdale*, 508 N.W.2d at 860. ECP contends that "[b]ecause Peterson's misrepresented the origin of the Infringing Publications and held ECP's material out to the public as its own, consumer protection is at issue . . . ." Filing 19 at 19.

But ECP's UDTPA claim suffers from essentially the same deficiencies as its unfair competition claim. As the Nebraska Supreme Court recognized in *Richdale*, "[w]hile the goal of consumer protection may provide the additional element necessary to set the claim apart from the rights afforded by the copyright act, that element is not at issue under the facts of this case," because the only "confusion or misunderstanding" or "scheme or device to defraud" to which consumers are subject is triggered by Peterson's alleged publication and sale of ECP's copyrighted material.[1] 508 N.W.2d at 860. "If protection of a customer is not implicated, then the rights which the law seeks to protect in this case are the same rights which are protected under the copyright act, which are the competitor's rights to control reproduction and distribution of the [materials]." *Id.* "Here, without the element of preventing consumer confusion, the rights [ECP] seeks to protect under the Uniform Deceptive Trade Practices Act are apparently coextensive with the rights protected by the copyright act." *Id.* at 861.

---

[1] That is, assuming that a purportedly deceptive trade practice has been committed in whole or in part in Nebraska, *see* § 87-304(c), which has not been alleged at this point.

In other words, the only consumer "confusion" at issue in this case is confusion as to who owns the copyright, meaning that ECP's alleged UDTPA violation is wholly coextensive with its copyright claim. Under ECP's theory, proof that copyrighted material was published for sale would, without more, also prove a violation of the UDTPA. It is certainly not clear to the Court that ECP has stated a claim for relief under the UDTPA. But, whatever claim it has stated is preempted by the Copyright Act.

## CONCLUSION

To the extent that ECP has stated a claim for relief for unfair competition or under the UDTPA, such claims are preempted by the Copyright Act. The Court will grant Peterson's motion to dismiss.

IT IS ORDERED:

1. Peterson's motion to dismiss (filing 12) is granted.

2. ECP's unfair competition and UDTPA claims are dismissed.

3. This matter is referred to the Magistrate Judge for case progression.

Dated this 5th day of June, 2017.

BY THE COURT:

John M. Gerrard
United States District Judge